IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREGORY BROOKS,**<br><br>        Plaintiff,<br>  v.<br><br>**NANCY A. BERRYHILL,**<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 6:16-cv-1359-SI<br><br>**OPINION AND ORDER** |

Tim Wilborn, WILBORN LAW OFFICE, P.C., P.O. Box 370578, Las Vegas, NV 89137. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Gregory Brooks ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for SSI and DIB in January 2014, alleging disability as of May 22, 2010. AR 18, 190-202. Born in 1956, Plaintiff was 54 years old on the alleged disability onset date and 59 years old at the time of the hearing. AR 40, 190, 192. Plaintiff alleges disability due to difficulty breathing, facial rash, "trigger finger," high blood pressure, and back, neck, stomach, and knee pain. AR 214. The Commissioner denied Plaintiff's application initially and upon

reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). AR 119-27, 134-41. After an administrative hearing, the ALJ issued an adverse decision on January 26, 2016. AR 18-74. The Appeals Council denied Plaintiff's timely request for review and, thus, the ALJ's decision became the final decision of the Commissioner. AR 1-6. Plaintiff now seeks review in this Court.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ performed the sequential analysis. AR 18-27. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 20. At step two, the ALJ concluded Plaintiff had the following severe impairments: history of right knee sprain/strain with resulting swelling and pain; and a history of a right "trigger finger." *Id.* At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 21.

The ALJ next assessed Plaintiff's RFC and found that he could perform medium work "except that he can occasionally kneel, crouch, crawl or climb." *Id.* At step four, the ALJ found Plaintiff could not perform any past relevant work. AR 25. At step five, the ALJ concluded that, based on the testimony of a vocational expert ("VE"), Plaintiff could perform other jobs existing in significant numbers in the national and local economy, such as industrial cleaner, warehouse worker, and laundry worker. AR 26. As such, the ALJ found Plaintiff not disabled. AR 27.

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) improperly assessing Plaintiff's subjective symptom testimony; (2) rejecting the lay testimony; (3) failing to account for all of Plaintiff's impairments in the RFC; and (4) rendering an invalid step five finding.

**A. Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ neglected to provide legally sufficient reasons supported by substantial evidence for discrediting Plaintiff's subjective symptom testimony concerning the

extent of his impairments. Pl.'s Opening Br. 18-23. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, Plaintiff testified that he became unable to work in May 2010 due to the onset of severe right knee pain and swelling, which was not precipitated by any traumatic event, necessitated the use of a cane or crutches, and made "it very difficult [for him] to walk or function or stand on [his] own." AR 41-42, 47-48. He testified further that in July 2010, he experienced heat exhaustion and has "never been the same." AR 45-46. When asked by the ALJ to clarify his symptoms relating to the July 2010 incident, Plaintiff explained that he had shortness of breath and "a whole lot of problems." AR 46-47.

Regarding his daily activities, Plaintiff denied performing any household chores, yardwork, grocery shopping, driving, or engaging in hobbies. AR 50-52, 60. He testified that his wife, Sheryl Kersey, tended to his needs, as well as the household. AR 50-54, 57. Specifically, Plaintiff explained Ms. Kersey wakes him in the morning and brings him tea, followed by breakfast, in bed. Plaintiff stated that his hands and arms are numb upon waking, and he needs 45 minutes to an hour to be functional. AR 52-53, 58. Ms. Kersey runs a hot epsom salt bath for Plaintiff, in which he soaks for 45 minutes to an hour while she washes him. AR 53. After his bath, Plaintiff returns to bed and Ms. Kersey serves him lunch, after which she massages his back, neck, and legs. *Id.* In between performing her afternoon chores, Ms. Kersey reads to Plaintiff or they listen to music, and later she prepares dinner and serves him in bed, where he remains until he falls asleep. AR 53-54.

In terms of functional abilities, Plaintiff testified that he can sit for less than ten minutes at a time. AR 55-56. He stated he is unable to stand at all without an assistive device, and needs to recline and nap frequently throughout the day to "alleviate pain" or "catch [his] breath."

AR 54, 56-57. Plaintiff testified that limitations relating to his knee and back have existed at the same level since 2010. AR 56-57. Concerning his hands, Plaintiff commented that his "trigger finger" problems began in 2010 or 2011, but have progressively worsened within the last two years. AR 57-59.

After summarizing this testimony, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" due to his activities of daily living and history of conservative treatment, as well as the lack of corroborating medical evidence. AR 22-25. The ALJ resolved that Plaintiff's "reported activities . . . shed doubt on his allegations." AR 24. Activities may be used to discredit a claimant, "[e]ven where those activities suggest some difficulty functioning, [where] they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). Substantial evidence supports the ALJ's conclusion in the case at bar. At the hearing, Plaintiff testified that his functional abilities were extremely limited due to his impairments. He could not perform adequate self-care, prepare simple meals, do household chores or yardwork, or shop, even infrequently, without the assistance of an electronic cart, and he was unable to sit for ten minutes, stand without an assistive device, or use his hands, especially upon waking. AR 50-57.

In contrast, Plaintiff's contemporaneous reports to medical providers indicate he exercised regularly. *See* AR 308-09 (explaining he "[d]oes a 2.5 hour work-out every week" in September 2013), 319 (disclosing in September 2012 that he "[r]ecently" experienced leg tightness "while doing exercise [but was] [n]ow doing better"), 351 (commenting in March 2014 that he was "working around the house"), 377 (describing his "routine of lifting weights for

appx. 2 hours" in October 2013); *see also* AR 395, 402 (reporting in May 2010 and June 2010 that he had been "work[ing] out a lot" prior to his right knee strain). The record also reflects that Plaintiff engaged in strenuous yard work at least once after the alleged onset date and was able to operate a computer despite any alleged finger problems. *See* AR 313 (Plaintiff endorsing neck pain, but not any hand or arm related issues, "when working on the computer" in June 2013); *see also* AR 329 (Plaintiff recounting his July 2010 heat exhaustion in October 2011 as being related to "6-7 hours of weed-whacking in 100 degree heat"), 345 (Plaintiff reporting in October 2013 that he experienced heat exhausting in July 2010 after "do[ing] some serious yard work including using the weed whacker"), 351 (Plaintiff describing in March 2014 how he "became overheated [in July 2010] while doing yard work in 100 degree temperatures"). As the ALJ reasonably resolved, this evidence belies Plaintiff's subjective symptom testimony regarding the extent of his impairments during the adjudication period.[1] AR 24.

The ALJ also found that Plaintiff's testimony was contradicted by his medical record, which revealed that his physical impairments were not as significant as alleged. AR 23-24. Central to this determination was the fact that objective evidence relating to Plaintiff's allegedly disabling conditions was unremarkable, he did not report any problems with "trigger finger" until 2011, and his treatment consisted largely of over-the-counter medications. *Id.* "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an

---

[1] Plaintiff maintains that "nothing about the itemized activities . . . is inconsistent with [his] claimed limitations" and, in any event, he submitted post-decisional letters to the Social Security Administration clarifying that he did "not use a computer often" or engage in any strenuous or prolonged yardwork in July 2010. Pl.'s Opening Br. 20-22 (citing AR 288-90). Further, Plaintiff asserts for the first time in his reply brief that it was error for the ALJ to rely on his weeding activities in July 2010 because they occurred "about six months before his alleged disability onset date." Pl.'s Reply Br. 7. Aside from the fact that Plaintiff's characterization of the record is not entirely accurate, the fact remains that, as discussed above, the ALJ accepted May 22, 2010, as the alleged onset date and Plaintiff does not now challenge that aspect of the ALJ's decision on appeal.

impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citations and internal quotations omitted). In addition, an ALJ may consider a claimant's failure to report symptoms in making an adverse credibility finding. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Similarly, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The record before the Court does not reflect any objective basis for the alleged degree of Plaintiff's "trigger finger" pain or his knee, back, or breathing problems. As an initial matter, other than Plaintiff's self-reports, there is no medical evidence of any back or breathing/cardiac condition, such that the ALJ did not assess any medically determinable or severe impairments related thereto. AR 21, 494. Significantly, Plaintiff does appeal the ALJ's step two finding.

Regarding his right knee, Plaintiff had a full range of motion and no ligament instability upon examination in June 2010. AR 402-03. A July 2010 MRI of Plaintiff's right knee demonstrated "[n]o significant gross abnormalities." AR 298; *see also* AR 291 (Phillip Wallace, M.D., an orthopedic specialist, describing the July 2010 MRI as "not particularly significant and certainly not [indicative of] a surgical issue"); 295 (Robert Shannon, M.D., an orthopedic specialist, describing the July 2010 MRI as "normal"). Rather, it suggested some "minimal" fraying of the mid body of the lateral meniscus and a possible "minimal" sprain or strain. AR 302-04. Imaging studies from 2015 were also essentially normal. AR 513.

Orthopedic treatment records from 2010 and 2011 do not reflect an etiology or diagnosis related to Plaintiff's right knee pain; physical examinations revealed a limited range of motion but no trauma, deformity, edema, erythema, or ecchymosis, and full strength. AR 291-301; *see also* AR 412, 415 (chart notes from Plaintiff's primary care physician reflecting the orthopedic

doctors' conclusion that "nothing was wrong" with Plaintiff's right knee). Although Dr. Wallace recommended diagnostic tools and modalities of treatment – i.e., aggressive medication therapy, imaging studies, lidocaine and/or steroid injections – Plaintiff declined to follow up. AR 292; *see also* AR 293, 299, 528 (three other treatment providers noting Plaintiff refused suggested interventions for his knee complaints). Moreover, while Plaintiff sought regular care from nurse practitioner Mark Press throughout the adjudication period, he reported right knee pain on only three occasions in an approximately four year period; once upon initiating treatment in 2011 and then not again until 2014, when he complained of right knee pain twice but did not seek any additional care in the form of medication therapy or referral to a specialist.[2] AR 306-44, 348-50, 424-512, 520-31.

Concerning his right "trigger finger" condition, Plaintiff did not describe any symptoms until January 2011. AR 291-2, 295-99, 402-15. He sought follow-up treatment in March 2011; although Plaintiff reported "10/10" pain in his right hand at that time, there were no objective findings upon examination. AR 294. He did not complain about "trigger finger" or otherwise seek any corresponding treatment until September 2014, at which point he declined any form of intervention. AR 300-401, 417-519. Thereafter, Plaintiff did not mention his "trigger finger" condition again until almost one year later, in June 2015, which coincides with his first report of hand stiffness and/or numbness. AR 520-33.

Despite alleging disability due at the hearing due to his right knee beginning in 2010, Plaintiff sought minimal treatment after initially attempting to diagnose the cause and refused to follow the treatment recommendations of his specialists. Similarly, although Plaintiff testified to

---

[2] Plaintiff reported chronic right knee pain in June and August 2015; the latest medical record before the Court is from October 2015. AR 520-31.

disabling hand/arm problems, he sought only scarce, intermittent, and conservative treatment.[3] In conclusion, the ALJ provided clear and convincing reasons, supported by substantial evidence, for affording less weight to Plaintiff's subjective symptom testimony. The ALJ's decision on this issue is affirmed.

**B. Third-Party Statements**

Plaintiff argues that the ALJ neglected to provide a germane reason to reject the testimony of Ms. Kersey. Pl.'s Opening Br. 24-25. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other

---

[3] Mr. Press ultimately indicated Plaintiff's pain symptoms could be related to an underlying "mental health condition." AR 350, 505; *see also* AR 533 (identifying Plaintiff's "subjective evidence of pain" as the only basis for his need for an assistive device or brace in April 2016); AR 292, 298, 359 (suggesting that Plaintiff's symptoms may be mentally, as opposed to physically, based). Plaintiff, however, refused any mental health counseling or to undergo a consultative examination at the expense of the Social Security Administration, as he strenuously maintains that his disability is exclusively physical. AR 264; *see also* AR 39 (Plaintiff's attorney acknowledging that "[t]here may be some somatoform there, but Mr. Brooks is not willing to do a psychological evaluation").

testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *Id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In January 2016, Ms. Kersey submitted a letter in support of Plaintiff's disability claim. AR 282. Ms. Kersey reported that Plaintiff's right knee "symptoms have been severe and consistent since that day [they began] in May 2010." *Id.* She observed that Plaintiff "struggles to sit or stand," "spends most of his day lying down on the bed with his legs propped up on pillows," needs assistance with self-care, cannot walk without a cane or crutches, "has a difficult time gripping items with his hands," and "loses his breath" easily. *Id.* Ms. Kersey also denoted that Plaintiff "complains of severe neck, lower back pain, and tail bone pain." *Id.*

The ALJ found that "significant weight cannot be granted to [Ms. Kersey's] statement" because it was "not consistent with the preponderance of the opinions and observations by medical specialists in this case." AR 25. Inconsistency with the record is a germane reason to discount third-party testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Lay witness testimony may also be disregarded on the same basis as the claimant's discredited subjective reports. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

As discussed above, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's subjective symptom testimony concerning the extent of his limitations. These reasons are applicable to Ms. Kersey's lay statements. *See Molina*, 674 F.3d at 1114-22. The ALJ's evaluation of the third-party testimony, therefore, is upheld.

**C. Residual Functional Capacity**

Plaintiff also argues that the ALJ's RFC was erroneous because it failed to "include right upper extremity limitations assessed by the state agency physicians" or "limitations established by his credible testimony and . . . the lay witness, Ms. Kersey." Pl.'s Opening Br. 25-26. The RFC is the maximum a claimant can do on a regular and continuing basis despite her impairments. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ considers limitations imposed by all the claimant's impairments, even those that are not severe, and evaluates "the relevant medical and other evidence," including the claimant's testimony. Social Security Ruling ("SSR") 96–8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). As discussed above, the ALJ did not err in weighing Plaintiff's subjective symptom testimony or Ms. Kersey's third-party statements. Plaintiff's contention, which is contingent upon a finding of harmful error in regard to the aforementioned issue, is therefore without merit. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Regarding whether Plaintiff's limitation of "trigger finger" should have been included in the RFC, Plaintiff is correct that the state agency consulting source found that he should be restricted to work with "[f]requent but not constant fingering/handling" by the right upper extremity. AR 102, 115. The ALJ afforded "great weight" to this opinion but omitted any

corresponding limitation in his written decision. *Compare* AR 25, *with* AR 21. As Plaintiff acknowledges, however, the hypothetical posed to the VE incorporated a restriction for work involving "no more than frequent handling and fingering with the right hand." AR 65-67; Pl.'s Opening Br. 25. Thus, the ALJ's scrivener's error was harmless because the jobs identified by the VE encompass the opinion of the state agency consulting source. *See Stubbs-Danielson*, 539 F.3d at 1174 (the erroneous omission of a well-supported limitation in the RFC is harmless if the jobs identified by the VE do not exceed that limitation); *see also Stout*, 454 F.3d at 1054 (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ did not commit reversible error in formulating Plaintiff's RFC.

**D. Step Five Finding**

Plaintiff contends the ALJ's finding at step five was deficient in two respects. First, Plaintiff asserts that the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT") because the representative occupations of industrial cleaner and warehouse worker require frequent crouching. Pl.'s Opening Br. 11-13. Second, Plaintiff argues the ALJ's use of the medium exertion Medical-Vocational Guidelines ("Grid") rules constituted harmful legal error because, based on the VE's testimony, there is only "one medium occupation" he can perform, which represents an unacceptable "remaining occupational base." *Id.* at 13-14; *see also* Pl.'s Reply Br. 14-16. Plaintiff, therefore, maintains the ALJ should have applied the light exertion Grid rules – namely, Rule 202.04 – pursuant to which a finding of disability is directed. Pl.'s Opening Br. 14-18.

Plaintiff's challenge to the ALJ's findings at step five places the proverbial cart before the horse. Whether the ALJ was required to apply the Grids or consult a VE to satisfy his step

five burden is the initial question. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). If the Grids are inapplicable, the inquiry becomes whether the VE identified a significant number of jobs in the national or local economy that Plaintiff could perform despite his impairments. *Id.* at 960-61.

Turning to the initial question, the Grids concern the strength requirements of jobs – *i.e.*, the claimant's exertional limitations – and consist of a matrix of combinations relating to four vocational factors: age, work experience, education, and physical ability. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citation omitted). Non-exertional impairments, like postural or manipulative limitations, can restrict a claimant's RFC in ways not contemplated by the Grids if sufficiently severe. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Unless the claimant's limitations are exclusively non-exertional, "the ALJ must consult the grids first" to determine if a finding of disability is directed "on the basis of exertional limitation alone"; if the claimant "is not disabled under the grids, the non-exertional limitations must be examined separately." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115-16 (9th Cir. 2006) (citing 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2); *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989); *Tackett*, 180 F.3d at 1102)).

Consequently, when the claimant has "significant nonexertional limitations the [Commissioner can]not rely on the grids but [instead must] put on a vocational expert." *Burkhart*, 856 F.2d at 1340 (citation and internal quotations omitted); *see also* SSR 83–14, *available at* 1983 WL 31254, *3-4 ("in complex situations [such as those involving exertional and/or non-exertional impairments], the assistance of a vocational resource may be necessary"). In other words, the Grids are generally inapplicable when they "do not adequately take into

account a claimant's abilities and limitations." *Thomas*, 278 F.3d at 960 (citation omitted); *Tackett*, 180 F.3d at 1103 (citation omitted); SSR 83–14, *available at* 1983 WL 31254, *4-6.

In the pending case, it is undisputed that Plaintiff's impairments pose significant non-exertional limitations. Pl.'s Opening Br. 15-16; Def.'s Resp. Br. 5. Indeed, many medium exertion jobs require frequent crouching. SSR 83–14, *available at* 1983 WL 31254, *5. Accordingly, the ALJ followed the proper procedure. The ALJ first consulted the Grids and resolved that, if Plaintiff had the RFC to perform the full range of medium work, "a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.14 and Rule 203.06."[4] AR 26. The ALJ, however, also noted that Plaintiff's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional non-exertional limitations, such that consultation with a VE was required. *Id.* The ALJ then relied on the VE's testimony to determine at step five that Plaintiff was not disabled. *Id.*

Plaintiff does not contend that the VE's testimony regarding the representative occupation of laundry worker is inconsistent with the DOT, the ALJ's RFC, or the state agency consulting source opinion. DOT § 361.684-014, *available at* 1991 WL 672983; Pl.'s Opening Br. 11-13; *see also Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007) (articulating the standard for determining a conflict between VE testimony and the DOT) (citing SSR 00–4p, *available at* 2000 WL 1898704; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). In response to the ALJ's hypothetical question, the VE stated there are 43,931 laundry worker positions in the national economy. AR 65-68. Thus, the significance requirement is satisfied by the laundry worker position alone. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29

---

[4] The ALJ cited Rules 203.14 and 203.06 because Plaintiff's age covered both the "advanced age" and "closely approaching retirement age" categories during the relevant time period, and he had a high school education or more, an RFC for medium exertion work, and unskilled past relevant work. AR 25-26, 62-65; 20 C.F.R. Part 404, Subpart P, App. 2, §§ 203.06, 203.14.

(9th Cir. 2014) (25,000 nationwide jobs significant); *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (court must uphold the ALJ's decision if the incidence of either regional or national jobs is significant) (citation omitted).

The ALJ determined at step five that Plaintiff was not disabled based on VE testimony, with Grid Rules 203.14 and 203.06 acting as a framework for the ALJ's decision. Under these circumstances, the ALJ was not required further to consider the erosion of Plaintiff's occupational base. *See, e.g.*, *Diedrich v. Berryhill*, 699 Fed.Appx. 726, 727 (9th Cir. 2017) (assessment of claimant's occupational base is unnecessary when "the ALJ relie[s] on a VE, not the Medical-Vocational Guidelines" at step five); *Cruise v. Astrue*, 2012 WL 5037257, *10 (D. Or. Sept. 28), *adopted by* 2012 WL 4966462 (D. Or. Oct. 17, 2012) (where "the ALJ relies on the testimony of a VE in making his step five finding, the issue is whether a significant number of jobs, as opposed to discrete occupations, have been identified") (citing 20 C.F.R. §§ 416.960(c), 416.966; SSR 83–14, *available at* 1983 WL 31254). The ALJ's finding at step five is upheld.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

**IT IS SO ORDERED**.

DATED this 9th day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge